Dargan, Ch.
delivered the opinion of the Court.
It falls to my lot, for the third time, to announce the judgment of this Court upon questions growing out of the cases above stated. My present duties are greatly abridged by the labors and adjudications of this Court and of the circuit Court, at preceding stages of the cause.
It is supererogative to travel over ground that has been already extensively and thoroughly explored, or to remark upon questions that have been already, discussed and adjudged by the Court.
In reference to the claim of Bird, Savage & Bird, which is a branch of the cause which seems to have called forth the most serious efforts at the recent hearing on the part of the appellant, (Col. Hunt), it may not be inappropriate, although it may be unnecessary, to offer some comments. Alluding to this branch of the controversy, and the judgment of the Court of Appeals thereon, the Chancellor who presided at the last circuit trial. *531 uses the following language. “ It is not too much to say, that no part of the case was more thoroughly investigated, so maturely considered, and none could be, as I thought, more conclusively and distinctly settled.” This is strong language; and to it I may add, that there was no part of the case, in reference to which the Court of appeals arrived at a conclusion more unanimously adopted, or more entirely satisfactory to itself.
I will not now pause to consider the question, .whether the claim of Bird, Savage & Bird was a debt due by the partnership estate of George and Savage Smith. That is made sufficiently manifest by the decree of 1825, in which provision was made for its payment out of the effects of the partnership estate; by the letter of Col. Hunt, of the 18th July, 1826, in which he explicitly admits the liability of the partnership estate for the debts, — and by other circumstances, not necessary to be particularly noticed.
That the balance of this debt, charged in schedule E, of the Master’s report, as having been paid by the heirs of Savage Smith, was so paid by them, or from funds belonging to them, is equally clear. The fact is susceptible of demonstration beyond any rational doubt. The circumstances on which this conclusion rests, are manifold, all tending to the same result.
The debt has been paid ; and must be supposed to have been paid by some of the parties interested in its extinction. Col. Hunt does not profess to have paid it. Nor is it pretended that Charles T. Brown paid it, except in the way of hypothetical suggestion. It is contended that Brown may have paid it, but there is not a tittle of proof that he did pay it, or any part of it. In fact, it does not appear that Brown had any direct interest in the payment of this debt after his assignment- of his share of the estate to Col. Hunt, by his indenture of the 11th February, 1825. Brown and wife, by this instrument, assigned their moiety of the estate to Col. Hunt, “ subject to the debts of the said firm, and the account between the parties interested in the same.” Again ; it was recited that Col. Hunt was to have all the rights, privileges and claims of the said Brown and wife in *532 the partnership estate, and to be “ subject to all the duties, obligations and responsibilities of the said Charles T. Brown and Sarah E. his wife, or either of them, in the final settlement and adjustment and division of the said copartnership estate, real and personal.” And after this and other recitals, Charles T. Brown and wife proceed by the indenture to assign to Col. Hunt, all their lands, negroes, &c. in the partnership estate, (which had, about the date of the indenture, been assigned to them by proceedings in partition); also, all the interest of Brown and wife, in a claim set up by Josiah Smith against the partnership estate, and which had previously been assigned to Brown and wife; also, all the share of Brown and wife in the surplus of the undivided estate, if any there should be, after the payment of debts ; “ subject, nevertheless,” as the deed goes on to declare, “ to the payment and discharge of the judgments, executions, debts, claims and demands, now due, owing and payable by the aforesaid late firm of George and Savage Smith; and to the accounts between the parties interested in the said copartnership estates.” The claim of Bird, Savage & Bird was then an acknowledged liability of the copartnership estate, for the payment of which, then in judgment, a provision had been made by a previous decree of the Court. Can any one doubt that, by the obligations arising out of the deed of assignment of the 11th February, 1825, and as between Hunt and Brown, it was the duty of the former, and not of the latter, to pay the one-half of this debt ? Brown had no interest in the extinguishment of the debt; for if the execution in favor of Bird, Savage & Bird had been pressed, and a portion of the estate assigned by Brown and wife had been sold to satisfy it, I cannot perceive that, under the conditions of the assignment, Brown would have been in any way responsible to Hunt on that account. And this seems to have been Col. Hunt’s own views when he wrote his letter to Peter Cuttino of the date 18th July, 1826. Peter Cuttino represented the heirs of Savage Smith, and the letter was written with the view of urging upon him the necessity of immediately raising a sufficient sum of money to pay off the balance of the *533 debt due to Bird, Savage & Bird. Brown, it must be remembered, was then in affluent circumstances and good credit. Yet Col. Hunt did not then say, that Brown was under any obligation to step forward for his relief in the payment of any part of the debt. But he proposes to unite with Mrs. Smith, the widow of Savage Smith, in borrowing the necessary amount; or, says he, “ I will borrow one-half, if she will the other.” He again says: — “ I think it very likely, that the money can be procured, and without some such measure, the most disastrous consequences will follow. The amount of each share would be five or six thousand dollars. This would close the estate, as to its debts: — all then would be, to settle the accounts and adjust a final decree. Should we not be able to get the amount through the Bank, we may, perhaps, by giving a premium, get it' from some individual. I do not like to do so, but it would be much better than to have a debt of $70,000 hanging over us.” It seems to me, that this would have been a very proper occasion to have laid claim to Brown’s assistance, if Brown had been interested in the extinction of the debt. But no allusion of that kind is made.
The proposal of Col. Hunt, in the letter above cited, seems not to have been adopted. And by the assistance of Mr. King, a negociation was effected with the United States Bank for the requisite amount, ($12,500) on the joint and several note of Mrs. Smith, the administratrix of Savage Smith, and Charles T. Brown, with a deposit, (as collateral security) of specialties to the amount of $ 19,667 98. The money thus raised, beyond all controversy, was applied to the satisfaction of the balance then due on the debt of Bird, Savage & Bird. Which of the parties paid this debt thus contracted with the United States Bank 1 Two witnesses were examined as to this point, namely: — Mr. M. King and Mr. Henry Cuttino. There is some confusion in the notes of this testimony. Mr. King is represented as having said, in reference to certain notes and securities there mentioned, that “ he paid the balance due on the notes, from the funds of Savage Smith, and then such of the collateral securities, *534 which had been assigned to the Bank, as were uncollected, together with the letter now produced in evidence, were returned to the witness, and witness delivered them up to the estate of Savage Smith.” The collateral securities lodged with the Bank to assure the payment of the note, were the assets of the estate of Savage Smith. Upwards of two thousand dollars were collected by the Bank on these securities, and applied as payments on the note of Mrs. Smith and Charles T. Brown. Again, this witness says, — “ the balance which witness paid the Bank, was for the note, or renewals, on which the loan for $12,500 had been made.”
The debt had been reduced by payments to $7,700; and Mrs. Smith having died, the note in Bank was renewed by a note of Charles T. Brown and George S. Smith, payable to, and endorsed by, Peter Cuttino, and this renewal note was confessedly satisfied by funds of the estate of Savage Smith.— When Mr. King speaks of having paid the balance of the note, or renewals, he was understood by the Master, before whom his testimony was taken, to have meant the balance of the note after the application of the money collected by the Bank upon the collateral securities. Mr. King further says, that he was the friend and counsel and confidential adviser of the heirs of Savage Smith, and was intimately acquainted with the transaction." And that, although he did not attend to putting the renewals in Bank, he was constantly consulted about them as they progressed. He was also the professional adviser of Charles T. Brown, after the sale to Col. Hunt, and was repeatedly consulted by him. And it is worthy of remark, that in the evidence of this witness, so cognizant, as he was, of the loan from the Bank, from its beginning to its extinction, there is not the slightest intimation that Charles T. Brown had made any payments. If Brown had made payments, is it not probable that he would have sought reclamation from Col. Plunt? Henry Cuttino testified, in so many words, that the debt contracted with the Bank was paid by the heirs of Savage Smith. In his cross-examination, he says, “ from his personal knowledge, he does not know *535 that Charles T. Brown and some of the family of Savage Smith did, or did not, raise money, but, from papers he has seen, he has reason to believe that they did : the papers he has reference to, are an account current of Mr. Mitchell King and a note for money borrowed from the Bank in Georgetown, by Charles T. Brown and Elizabeth Smith : the money so borrowed, was applied to the payment of the debt of Bird, Savage & Bird,” (fee. Whether this witness intended, in his cross-examination, to qualify his statement to the effect, that he had derived the whole of his information on the subject from the papers that he had seen, does not very clearly appear. He may not have per- ■ sonally known of the negociation with the Bank, and the application of the money to the debt of Bird, Savage & Bird, and yet, being the brother of the administrator of the widow of Savage Smith, he may have personally known that the debt due to the Bank, (which was but a substitute for the balance of that which had been due to Bird, Savage & Bird,) had been paid by the assets of the estate of Savage Smith.
The Master has found, and so states distinctly in his report, that the whole amount of the debt contracted with the Bank has been paid by the heirs of Savage Smith. This report bears date 8th January, 1846. The decision of the Master on this point, was then promulged, together with the evidence on which it was based. He refers expressly to Mr. King’s evidence as supporting his judgment. If the Master had so widely misinterpreted Mr. King’s evidence, in the interval which has elapsed from January, 1846, to the trial of the cause, why were not steps taken for the re-examination of Mr. King 1 Col. Hunt knowing that the Master had reported the debt with the Bank to have been paid by the heirs of Savage Smith, in his exceptions to that report did not controvert the fact. He does not deny, (in his exceptions,) that the heirs of Savage Smith did pay the whole of the Bank debt, as found by the Master. He does not assert that Charles T. Brown paid any part thereof.
For the foregoing reasons, this Court, at the former hearing, (Charleston, January Term, 1850,) was satisfied that the report *536 of the Master was right in this particular. And the appeal decree confirmed the report (as to this matter) in language unmis-lakeably clear and distinct. If the question were now res inte-gra, this Court would come to the same conclusion. And indeed, it is difficult to perceive how such a conclusion could be avoided upon the evidence before us.
I have, in deference to the zealous and apparently sincere argument offered in behalf of the appellant, travelled over the grounds which have led the Court to its judgment in reference to this branch of the case. And it is satisfactory, upon a reexamination of the facts, to perceive that there has been no error committed, as was broadly asserted at the bar. But the question is not open. It is conclusively and finally adjudged by the appeal decree. And though an error of judgment, as tó the facts, had been made manifest, the Court could not have corrected it. As to facts, a bill of review, or a petition for a rehearing, would not lie, except upon evidence, not cumulative, discovered subsequent to the trial.
In reference to the other questions, raised and discussed on behalf of Col. Hunt, it is deemed unnessary to add anything to that which has been stated in the Circuit Decree. This Court concurs with the Chancellor who heard the 'cause, except as to one matter which will be hereinafter considered.
The question, as to interest, made in the appeal which has been taken on behalf of the heirs of Savage Smith, is interesting from its not having been heretofore much discussed. Upon demands bearing interest at law, this Court, I conceive, would be bound to allow interest. But, as to non-bearing interest demands, the claim of interest will be allowed or disallowed in this Court, according to the equity of the case. It is a matter of discretion. It is rarely disallowed in the adjustment of accounts, for it is rarely otherwise than an equitable claim. Where parties from laches, or from other similar causes, fail for a long time to prosecute their claims to a final settlement, and suffer them to lie still until the interest account has swelled to an enormous magnitude, (as in this case,) the claim for interest does not pre *537 sent itself, in this Court, in a favorable light. It would be a premium for delay. This Court concurs with the Chancellor on this point also.
This disposes of all the questions raised in the appeals which have been taken from the circuit decree of June Term, 1850.— But there are other matters yet to be considered.
On the seventh of March, 1850, the Solicitor of the heirs of Savage Smith sued out before the Register in Equity a fieri facias on the decree of the Court of Appeals, which had been rendered in the cause at the preceding term of the Court. A motion was submitted by Mr. Campbell, acting for Col Hunt, that the execution be recalled. This motion was refused. Mr. Campbell, acting on the behalf of Col. Hunt, submitted a motion, that proceedings, under the execution, be suspended until the further order of the Court; and that the complainants have leave to lodge the execution to bind.
The issuing of a fi. fa. could only be upon the ground that the decree had an operation in personam against Col. Hunt and upon his estate generally. The appeal decree of 1850 is a decree in rem. It operates only on the property of the partnership estate of George and Savage Smith, which was allotted in the division to Charles T. Brown and wife, and which has come into the possession of Col. Hunt by assignment from them. The appeal decree of 1850 creates no personal liability against Col. Hunt. It is expressly so declared. And so, the circuit decree of June Term, 1850, creates no personal liability against Col. Hunt, except as to the amount decreed against him on account of the purchase of Clegg’s Point. A writ of fieri facias, to operate on the property of Col. Hunt generally, would be improper. They?, fa., which has been issued, must be recalled, and so much of the circuit decree of June Term, 1850, as allows the complainants to proceed on said fi.fa., (which had been suspended by a previous order of the Court,) must be reversed.— The complainants will, of course, have a right to proceed to enforce the payment of the debt decreed to be due on account of *538 the purchase of Clegg’s Point, by any process^ which the practice of this Court allows.
It is ordered and decreed, that the fieri facias issued in this cause on the 7th day of March, 1850, be recalled and set aside, and so much of the circuit'decree of June Term, 1850, as allows the complainants to proceed under the said fieri facias, be reversed. In all other respects, the decree of this Court is, that the said circuit decree be affirmed, and the appeals therefrom be dismissed.
At the -February Term of the Circuit Court, the Solicitors of the heirs of Savage Smith moved the Court to grant an order nisi for the sale of so much of the estate of George and Savage Smith as had been allotted in partition to Charles T. Brown and wife, and by them assigned to Col. Hunt,-as should be necessary to satisfy the debt to which the said property was declared to be liable by the appeal decree of January Term, 1850. This order was refused by the presiding' Chancellor, on the ground that it would be improper to grant it until the final accounting was had upon the matters of controversy reserved by the appeal decree. From this decision of the Circuit Court an appeal has also been taken.
It is not perceived, that there was any error in' the decision under the circumstances that then existed. And the appeal is dismissed. The matters of controversy reserved by the appeal decree have since all been adjudged. And it is now proper that the complainants should have an order for the enforcement of the lien which has been declared by the decree of the Court.
It is therefore ordered and decreed, that unless the said Benjamin F. Hunt shall on or before the first day of November next pay to the heirs of Savage Smith, or their legal representatives, the sum adjudged and decreed against him by the appeal decree of February Term, 1850, being the sum of six thousand and seventy-two dollars and twenty-five cents, with interest thereon from the 16th day of December, 1826, to the time of payment, James W. Gray, one of the Masters of the Court of Equity in Charleston, shall, after two weeks’s notice in one of the news *539 papers published in Charleston, and one of the newspapers published in Georgetown, proceed to sell for cash, before the Court House door in Georgetown, first the negroes, and then, if necessary, the lands, which, in the partition of the partnership estate of George and Savage Smith, were assigned to Chas. T. Brown and wife, and by them assigned to Benj. F. Hunt, for the purpose of satisfying the aforesaid sum of $6,072 25, and interest thereon, together with the costs and commissions on the sale.— And it is also ordered that the said Master do pay over the said monies, so collected and raised, to the parties entitled to receive the same.
It is also ordered that, in the event the said B. F. Hunt shall fail to pay the said sum on or before the first day of November next, as herein before ordered and directed, the said B. F. Hunt do deliver into the hands of the said James W. Gray the said property, or so much as may be necessary to raise the said sum of money, whenever, after the first day of November next, he shall be required to do so by the said James W. Gray.
Dunkin and Wae.di.aw, CC. concurred.
JohNstoN, Ch.
I am of opinion that the questions in relation to the demand of Bird, Savage & Bird, are concluded by the appeal decree of 1850: (and I am, now, pretty well satisfied, upon pretty clear evidence actual and presumptive).
I agree with the Court upon the subject of interest.
I am not dissatisfied with its judgment in relation to Clegg’s ■ Point.
In relation to the advances to Brown and the negro hire, though these were ruled by the Court of Appeals to fall within - the perview of the decree of 1825, yet I think the evidence on the subject is too obscure, and the transactions too antequated,.. to allow of a satisfactory adjudication : and that after the administrators have been discharged, the heirs of Savage Smith,. who had no direct right of reclamation, should not be allowed; to reclaim through the administrators, — at least without clean-proof that the administrators could reclaim. The only ground *540 is the subsequent depreciation of assets, in the hands of the administrators, or of the Court: and neither administrators, or other heirs, have a right of reclamation from such a circumstance.
After the hearing in these causes at this Term, and before the above decision was pronounced, Benjamin F. Hunt presented a petition for a re-hearing, upon grounds which sufficiently appear in the following opinion of the Court, delivered by